UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
KIRSTEN DAGROSA, TIONA HAYES, CAROL
JOHNSON, and MITCHELLE KNIGHT,

                          Plaintiffs,

            -against-

BROOKLYN BUREAU OF COMMUNITY
SERVICE d/b/a Brooklyn Community Services
and TURNING POINT BROOKLYN, INC.,

                          Defendants.
---------------------------------------------------------------- x

**ORDER**

25 Civ. 2751 (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

Before the Court is motion of Defendant Brooklyn Bureau of Community Service, doing business as Brooklyn Community Services ("BBCS"), and Turning Point Brooklyn, Inc. ("TPBI" and, collectively with BBCS, "Defendants") to dismiss the amended complaint filed by Plaintiffs Kirsten Dagrosa, Tiona Hayes, Carol Johnson and Mitchelle Knight ("Plaintiffs"), see generally ECF No. 29, which asserts the following claims in relation to Plaintiffs' employment with Defendants: (1) hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); (2) retaliation pursuant to Title VII; (3) discrimination pursuant to § 8-107 of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. (the "NYCHRL"); (4) retaliation pursuant to § 8-107 of the NYCHRL; and (5) violation of § 740 of the New York Whistleblower Statute, N.Y. Lab. L. §§ 1 et seq. (the "NYLL"). See generally ECF Nos. 17-19-4. Plaintiffs opposed the motion. See generally ECF No. 20. Defendants replied. See generally ECF No. 21. For the reasons stated herein, the Court denies Defendants' motion.

1

## I.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert the defense of failure to state a claim upon which relief can be granted by motion.  Courts addressing motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the" plaintiff.  New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo, 122 F.4th 28, 39 (2d Cir. 2024) (citation omitted), cert. denied sub nom., BDO USA, LLP v. New England Carpenters Guaranteed Annuity & Pension Funds, No. 24-1151, 2025 WL 2824451 (S. Ct. Oct. 6, 2025).  A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Sierra Club v. Con-Strux, LLC, 911 F.3d 85, 88 (2d Cir. 2018) (citation & quotations omitted).  Nonetheless, courts "are not required to accept as true allegations that are wholly conclusory," Walker v. Senecal, 130 F.4th 291, 297 (2d Cir. 2025) (citation & quotations omitted), such that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Singh v. Deloitte LLP, 123 F.4th 88, 93 (2d Cir. 2024) (citation & quotations omitted).

## III.     DISCUSSION[1]

The Court discusses each of Plaintiffs' claims in turn and, for the reasons discussed below, denies Defendants' motion as to each of the claims.

---

[1] Defendants initially argued that Plaintiffs failed to exhaust their administrative remedies prior to filing this action.  See ECF No 18 at 15 n.2 (citations omitted).  Plaintiffs subsequently received their right-to-sue letters and filed an amended complaint reflecting this updated circumstance, see ECF No. 29 ¶ 2, on consent of Defendants, see generally ECF No. 28.  Defendants declined the opportunity to file supplemental briefing as to any new grounds for dismissal.  See 3/11/2026 Order; ECF No. 28.

### A.    Title VII And NYCHRL Claims For Hostile Work Environment[2]

For the reasons discussed below, the Court denies Defendants' motion as to the Title VII and NYCHRL[3] claims for hostile work environment.

In order "[t]o state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively

---

[2] Defendants contend that the Title VII claims of Ms. Dagrosa, Ms. Knight, Ms. Hayes and Ms. Johnson are untimely because, given that Ms. Dagrosa, Ms. Knight and Ms. Hayes filed EEOC charges on February 20, 2024, and that Ms. Johnson filed EEOC charges on February 21, 2024, they must allege qualifying conduct occurred on or after April 26, 2023, as to Ms. Dagrosa, Ms. Knight and Ms. Hayes, and on or after April 27, 2023, as to Ms. Johnson, but have failed to do so.  ECF No. 18 at 15 (citation omitted).  More specifically, Defendants argue that there are only minimal allegations within the relevant period.  As to Ms. Dagrosa, Ms. Knight and Ms. Johnson, the only relevant allegations within the time period are that a client "disclosed to management that they were in love with Dagrosa" and that a client "engaged in violent behavior toward their Case Manager."  Id. at 15 (citations omitted).  As to Ms. Hayes, the only relevant allegations within the time period are that a client "continued to engage in indiscriminate threats of violence to staff members and destroyed property" and that a client "texted Hayes a combination of sexually explicit and violent text messages."  Id. at 16 (citation omitted).  The Court rejects Defendants' attempts to parse Plaintiffs' allegations and analyze each allegation individually, which is inconsistent with binding case law requiring that Title VII allegations be viewed in their totality.  See Moll v. Telesector Resources Grp., 760 F.3d 198, 200 (2d Cir. 2014) (reasoning that "[t]he district court erred when it refused to consider all allegations in the Complaint in their totality, including those that were not sexually offensive in nature," as "[s]ex-based hostile work environment claims may be supported by facially sex-neutral incidents and sexually offensive acts may be facially sex-neutral" (citation & quotations omitted)).  As to the allegations about events prior to April 26th and 27th, Plaintiffs may argue that the continuing-violation doctrine makes them relevant and actionable.  See Olivieri v. Stifel, Nicolaus & Co., 112 F.4th 74, 88 (2d Cir. 2024) (reasoning that hostile work environment claims "are subject to the continuing violation doctrine because, unlike discrete acts, [t]heir very nature involves repeated conduct," as "[a] hostile work environment generally doesn't occur on any one day" but rather "emerges over a series of days or perhaps years," such that the "claims accrue, and reaccrue, each time the defendant commits an act that is part of the same course of harassing conduct" (citations & quotations omitted)).

[3] Because the provision of the NYCHRL that "governs claims for . . . hostile work environment . . . entails a more liberal standard than Title VII," Lewis v. Roosevelt Island Op. Corp., 246 F. Supp. 3d 979, 989 n.5 (S.D.N.Y. 2017) (citation omitted), given that Plaintiffs sufficiently pleaded their Title VII claim, as discussed below, they have necessarily sufficiently pleaded their NYCHRL claim.

3

severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex or because of another characteristic protected by Title VII." La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 209 (2d Cir. 2010) (citations & quotations omitted); see Falu v. Cnty. of Orange, 814 F. App'x 655, 658-59 (2d Cir. 2020) (same (citing Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)). A plaintiff must also plead that the employer is "responsible for the conduct at issue." La Grande, 370 F. App'x at 209 (citation & quotations omitted).

### 1. Whether The Complained Of Conduct Was Objectively Severe Or Pervasive

Defendants argue that "Plaintiffs allege that[,] over the span of approximately three years, they were subject to five instances of conduct from three different Clients (out of 27) that were sexual in nature," which is "sporadic conduct [that] does not constitute harassment that is severe or pervasive enough to establish a hostile work environment based on sex, especially in [the] context of Plaintiffs' jobs serving mentally ill clients," citing certain out-of-Circuit decisions in support of this proposition. ECF No. 18 at 21-22 (citations omitted).

Plaintiffs counter that "[t]he Complaint describes the sex harassment as continuous from 2021 until termination," consisting of

> obscene language and conduct alongside physical violence including email, phone and in-person stalking, chasing, jumping on a moving car's hood, threats of bodily injury and deadly force to Plaintiffs, and towards Clients themselves, promises to murder their families, physical intimidation in combat gear with scissors, a hammer, knife, fire extinguisher, suspicious liquids, chairs, garbage cans and a dog and a chaotic disruption including disconnecting phones, computers and noise cancellation boxes, often necessitating intervention by the Security Guards, NYPD or EMS,

4

ECF No. 20 at 16-17 (citations omitted), which "made it impossible to service other clients or safely conduct their work." Id. at 17 (citation & quotations omitted).  Plaintiffs also note that they "did not expect clients to be sexually menacing, were not equipped to handle it, and were denied appropriate training"; "[t]he vast majority of clients did not behave in this manner[,] and[,] before 2021[,] plaintiffs worked in harmony without incident." Id. at 18 (citations omitted).

In reply, Defendants, again relying on out-of-Circuit decisions, argue that courts "have overwhelmingly dismissed patient-conduct claims as outside the scope of Title VII," effectively arguing that Plaintiffs cannot successfully bring a Title VII claim for a hostile work environment because they worked in a supportive housing environment.  ECF No. 21 at 6-7 (citations omitted).

The Court finds that Plaintiffs have sufficiently pleaded that the complained of conduct was objectively severe or pervasive, as argued in Plaintiffs' opposition to the motion.  See ECF No. 20 at 15-18.  The Court declines Defendants' invitation to create a carveout for "patient conduct" cases from Title VII hostile work environment claims, particularly in the absence of binding Circuit precedent to that effect[4] and at this early procedural stage.  Courts within the

_____

[4] Defendants' citation to Wright v. Monroe Comm. Hosp., 493 F. App'x 233 (2d Cir. 2012), a summary order from the Second Circuit, is unavailing.  There, in the face of the plaintiff's allegations that "she was reassigned to care for a patient who was known to make intolerable racist comments and target the minorities within the staff and make complaints and accusations against them, . . . that the patient repeatedly denigrated Plaintiff and made racial comments such as calling Plaintiff 'n[*****]'," and that "the defendant refused to acknowledge her complaints or simply stated that the plaintiff had dementia and told Plaintiff 'sometimes you just have to deal with it,'" the Second Circuit reasoned that the plaintiff did "not plausibly allege that the hospital's decision to assign [the plaintiff] . . . to the relevant patient was motivated by racial animus," given that the plaintiff had alleged that the reassignment arose from a dispute with another nurse, and that the plaintiff did not sufficiently allege "that the hospital did not take sufficient action in response to her assigned patient's racist comments" and failed to "provide a specific basis . . . for imputing the objectionable conduct to the employer, because the hospital

Second Circuit have denied motions to dismiss or for judgment on the pleadings in the face of similar allegations in "patient conduct" cases, given that such conduct, as alleged, was objectively severe and pervasive.  See 98 Starr Road, 682 F. Supp. 3d at 420, 426-28 (noting that courts "look[] at all the circumstances" in order "[t]o determine whether an environment is sufficiently hostile or abusive"; reasoning that, "[w]hile the standard for establishing a hostile work environment is high, the Second Circuit has repeatedly cautioned against setting the bar too high, noting that [w]hile a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse"; offering that "[t]here is . . . no bright-line rule precluding liability if the harassing patient is mentally impaired"; and holding that the allegations of "repeated incidents of racial incidents, physical assaults, and threats of deadly force" from patients and residents of a senior care facility were "more than suffic[ient] to allege a hostile work environment under Title VII" (citations & quotations omitted)); Cadet v. Alliance Nursing Staffing of N.Y., Inc., 632 F. Supp. 3d 202, 211, 222, 233 (S.D.N.Y. 2022) (considering a claim for a hostile work environment pursuant to Section 1981, which is "analyzed in the same manner and under the same tests under . . . Title VII," and, in denying the defendant employer's motion to dismiss, reasoning that the plaintiff home health aide's allegations as to an "assault . . .

---

cannot be held responsible for the outbursts of a patient suffering from dementia."  Id. at 235 (citations & quotations omitted).  Far from creating a carveout for "patient conduct" cases, this summary order made a fact-specific determination as to the insufficiency of the plaintiff's allegations as to the reasons for her assignment and the defendant's failure to respond to her complaints in that instance.  See E.E.O.C. v. 98 Starr Road Op. Co., 682 F. Supp. 3d 414, 424 (D. Vt. 2023) (distinguishing Wright, which "is neither precedential nor controlling," because it was "a case in which a single patient suffering from dementia [wa]s alleged to have uttered racial slurs," as opposed to 98 Star Road, which involved "allegations of physical assaults, . . . racially hostile conduct and comments from a number of patients," and of the defendant's knowledge of such conduct and "repeated[] fail[ure] to redress it").

accompanied by various racially[]motivated remarks and a false 911 call" on a single date were sufficient to survive the defendant's motion to dismiss (citations omitted)), reconsid. on other grounds denied, No. 21 Civ. 3994 (KPF), 2023 WL 3872574 (S.D.N.Y. Jan. 6, 2023), reconsid. on other grounds denied, No. 21 Civ. 3994 (KPF), 2023 WL 3872588 (S.D.N.Y. Apr. 12, 2023).

For the reasons discussed in 98 Starr Road and Cadet, Plaintiffs' allegations here constitute sufficiently objectively severe or pervasive conduct.

**2.      Whether The Complained Of Conduct Created An Environment That Plaintiffs Subjectively Perceived As Hostile Or Abusive**

Defendants do not argue that Plaintiffs have failed to plead that the complained of conduct created an environment that Plaintiffs subjectively perceived as hostile or abusive. See ECF No. 18 at 14-22.

**3.      Whether The Complained Of Conduct Created A Hostile Environment Because Of Plaintiffs' Sex**

Defendants argue that Plaintiffs "do not allege that the complained of conduct was related to their sex." ECF No. 18 at 16. More specifically, Defendants contend that "Plaintiffs allege numerous instances where their mentally ill Clients exhibited violent conduct towards Plaintiffs, other staff members, and third parties" but "never allege that the Clients' alleged conduct related in any way to their sex or any other protected characteristic." Id. at 17 (citations omitted). Defendants also argue that the allegations of conduct "referencing explicit sexual content" and similar behavior are "not tied to Plaintiffs' sex." Id. at 18-19 (citations omitted).[5]

In response, Plaintiffs argue that "a hostile work environment claim doesn't even require that the harasser targeted a plaintiff because of their protected trait–it simply requires that the

---

[5] Defendants' contention that "Plaintiffs do not even identify their own sex" in the amended complaint, ECF No. 18 at 17, is incorrect, as the amended complaint identifies Plaintiffs as women, see ECF No. 29 ¶¶ 4-7.

environment was hostile because of the protected trait." ECF No. 20 at 12 (emphasis in original) (citations omitted). Plaintiffs further offer that "declarations of love or attraction, combined with violent threats and behavior," as here, "readily clear the bar for a claim of discrimination based on sex." Id. at 14.

In reply, Defendants contend that "general Title VII authority holding that workplace conduct affecting women disproportionately can support a claim" is inapplicable to "patient conduct" cases, without citation, and that such authority nonetheless does not preclude dismissal here. ECF No. 21 at 9-10 (citation omitted).

The Court concludes that Plaintiffs have sufficiently alleged that the complained of conduct created the environment at issue because of Plaintiffs' sex. Plaintiffs' amended complaint contains numerous allegations as to sexual harassment they allegedly suffered. See, e.g., ECF No. 29 ¶ 29 (reciting that "Client 1 . . . made comments which included discussions of genitalia, sex and sexual acts and repeatedly sent sexually explicit images and messages, including about bestiality, orgies and hard-core porn, including to the emergency work cell phone, including in the middle of the night," requiring notification to the division director and the police department); id. ¶ 33 (stating that "Client 1 persisted in sending hyper-sexual messages after work hours accompanied by violent behavior"); id. ¶ 41 (alleging that "Client 2 appeared at the glass office door with their pants around their knees" and that "Client 1 also approached the office scantily dressed or would undress themselves outside the office window by lifting their skintight shorts and rubbing their bare butt against their office glass door while making hypersexual comments or threats" and taunted Ms. Dagrosa). Considering these incidents in the context of the totality of the circumstances alleged, as this Court is required to do, the Court finds that Plaintiffs have sufficiently alleged that the complained of conduct

created the environment at issue because of Plaintiffs' sex.  See Moll, 760 F.3d at 203-04 (noting that "[f]acially [sex-]neutral incidents may be included . . . among the totality of the circumstances that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex"; stating that the plaintiff's "[c]omplaint includes both sexually overt and facially sex-neutral incidents to allege a sex-based hostile work environment"; and reversing the grant of the motion to dismiss (citations & quotations omitted)); Olsen v. Suffolk Cnty., No. 15 Civ. 4064 (JS) (AYS), 2016 WL 5395846, at *11 (E.D.N.Y. Sept. 27, 2016) (reasoning that the "[d]efendants' argument that [the] . . . actions [at issue] were not based on gender is quickly disposed of" because of "[t]he overtly sexual nature of [the]. . . conduct" (citations omitted)).

### 4.      Whether Defendants Were Responsible For The Conduct At Issue

Defendants argue "that an employer is not strictly liable for the alleged harassing conduct of nonsupervisory employees" and that

> [a]n employer can only be liable for the conduct of nonsupervisory employees if the plaintiff shows that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment, yet failed to take appropriate remedial action.

ECF No. 18 at 19-20 (citations omitted).  Defendants contend that "Plaintiffs do not allege that they ever complained of harassment or discrimination," as opposed to safety concerns, such that Plaintiffs did not trigger Defendants' obligations to act and that, "[e]ven if such a complaint had been made, the conduct of mentally ill patients does not constitute intentional harassment for which an employer can be held liable."  Id. at 21.

In response, Plaintiffs argue that "[t]he employer's responsibility is to provide its employees with nondiscriminatory working conditions" and that "[t]he genesis of inequality" does not matter but what "matter[s] is how the employer handles the problem," and, by

9

extension, Plaintiffs argue that Defendants are liable for the patients' conduct because they "had knowledge of virtually every instance of sex harassment because it was documented on multiple platforms through multiple avenues," and because "Plaintiffs sought but did not secure many possible interventions" but instead were "suspended . . . , belittled . . . , and prohibited . . . from carrying pepper spray, making clear that [P]laintiffs had no recourse but to tolerate the violent, sexualized harassment" and that "[f]urther complaints about the harassment would only – and did only – lead to termination." ECF No. 20 at 19-21 (citations & quotations omitted).

Plaintiffs' amended complaint alleges that Defendants are responsible for the patients' conduct at issue, such that Plaintiffs' claim is not dismissable on that basis. Employers may be held liable for harassing conduct that they "knew or reasonably should have known about" and as to which they "failed to take reasonable remedial action." 98 Starr Road, 682 F. Supp. 3d at 423 (citations & quotations omitted). This standard may apply in "patient conduct" cases as well. See id. (reasoning that, "[b]ecause there is no bright-line rule preventing employees from bringing Title VII hostile work environment claims against a long-term care facility for the harassing conduct of the facility's patients, even those that are cognitively impaired," and because the plaintiff "has plausibly alleged that a specific basis exists for imputing the objectionable conduct to the employer," judgment on the pleadings in the defendant's favor was unwarranted); Cadet, 632 F. Supp. 3d at 229 (reasoning that, "[w]here a plaintiff relies on third-party conduct to make out a hostile work environment claim, . . . the employer is liable only if it was negligent in controlling working conditions," meaning that "the employer has either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it," in contravention of its "duty to take reasonable steps to eliminate it," and holding that the "[p]laintiff has sufficiently pleaded facts to show that [the defendant] . . . knew of [the patient's]

10

. . . harassment and failed to correct it" (footnote, citations & quotations omitted)).  It may be that Defendants may be able to successfully assert a defense based on the nature of the patients' needs or similar arguments, but dismissal based on that possibility at this stage is not appropriate.

Accordingly, the Court denies Defendants' motion as to the Title VII and NYCHRL claims for hostile work environment.

### B.      Title VII And NYCHRL Claims For Retaliation

For the reasons discussed below, the Court denies Defendants' motion as to the Title VII and NYCHRL[6] claims for retaliation.

In order "[f]or a [Title VII] retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against him, (2) because he has opposed any unlawful employment practice," with the latter requiring plausible allegations as to "but-for" causation, which need not be the exclusive cause for the action and which "may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." Duplan v. City of N.Y., 888 F.3d 612, 625 (2d Cir. 2018) (citations & quotations omitted); see Sealy v. State Univ. of N.Y. at Stony Brook, 834 F. App'x 611, 614 (2d Cir. 2020) (stating that, "[f]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against him, (2) because he has opposed any unlawful employment practice" (citation & quotations omitted)).

---

[6] Because "[r]etaliation claims under the NYCHRL . . . are subject to a broader standard than under . . . Title VII," Kraiem v. JonesTrading Inst'l Servs. LLC, 571 F. Supp. 3d 53, 60 (S.D.N.Y. 2021) (citation & quotations omitted), given that Plaintiffs sufficiently pleaded their Title VII claim, they have necessarily sufficiently pleaded their NYCHRL claim.

### 1. Adverse Employment Action

Neither Plaintiffs nor Defendants dispute that Defendants took an adverse employment action against Plaintiffs, namely, as to Ms. Dagrosa, Ms. Johnson and Ms. Knight, suspending them, and, as to each Plaintiff, terminating her. See ECF No. 29 ¶¶ 51, 56.

### 2. Causation

Defendants argue that Plaintiffs' "alleged complaints to [Defendants] . . . do not constitute protected activity," largely reiterating their position that Plaintiffs did not invoke their sex when complaining about their patients' conduct. ECF No. 18 at 24-25. Defendants also argue that any complaints about alleged "discriminatory behavior from Clients . . . do not constitute protected activity when the client has a mental health illness." Id. at 25.

In response, Plaintiffs contend that their "EEOC Complaint[s] . . . make[] plain that [P]laintiffs explicitly reported the harassment and hostile work environment and that [m]anagement had long been aware of the harassment and danger from the onset of the sexual violence from a variety of sources," after which Plaintiffs were terminated. ECF No. 20 at 22 (citations & quotations omitted).

In reply, Defendants reiterate their arguments. See ECF No. 21 at 12-13. Again, a patient-conduct defense may be available to Defendants, but it cannot defeat Plaintiffs' claims at the pleading stage because such defense would be based on evidence outside of the present record.

The Court rejects Defendants' arguments as to Plaintiffs' purported failure to invoke a protected characteristic when raising their Title VII concerns with Defendants and as to creating a carveout for "patient conduct" cases for the same reasons discussed supra, Sec. III(A)(3) and Sec. III(A)(1), respectively.

Accordingly, the Court denies Defendants' motion as to the Title VII and NYCHRL claims for retaliation.

### C.    Violation Of NYLL § 740

For the reasons discussed below, the Court denies Defendants' motion as to NYLL § 740.

NYLL § 740(2) provides that

> [a]n employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety.

NYLL § 740(2); see Collison v. WANDRD, LLC, 737 F. Supp. 3d 231, 245-46 (S.D.N.Y. 2024) (stating that a claim pursuant to NYLL § 740 requires a plaintiff to plead "(1) retaliatory action, (2) activity protected by the statute, and (3) a causal link between the two" and holding that the plaintiff stated such a claim where he alleged that he raised violations of "numerous regulatory and legal requirements" with the defendants, after which he was "uninvited to company meetings, was told that he was not a cultural fit for the company, was told that the company wanted to make him a 1099 employee again, and was ultimately terminated" (citations & quotations omitted)); Ackerson v. Restani Constr. Corp., 223 N.Y.S.3d 268, 270-71 (2d Dep't 2024) (reasoning that "the [New York] Supreme Court correctly determined that the amended complaint stated a cause of action to recover damages for a violation of Labor Law § 740," as it "set forth sufficient allegations that . . . the defendants retaliated against the plaintiff in violation of Labor Law § 740 for the plaintiff's complaints regarding [one of the defendant's] . . . illegal dumping by taking adverse employment actions that affected the plaintiff's current and future employment" (citations omitted)).

13

Defendants argue that Plaintiffs fail to "allege any . . . activity or practice [of Defendants] that they believe violated the law" and fail to "allege any causal connection between . . . reports [to 'police and third party mental health entities'] and their terminations in 2023." ECF No. 18 at 26-27. Defendants also argue that "reporting that a Client is having a mental health episode is not a report of a violation of law or a danger to public safety" and that, "even if reporting a Client's mental health episode could be considered to be a report of a danger to public safety or violation of law, Plaintiffs' alleged report did not identify any danger to public safety or a violation of law attributable to Defendants." Id. at 27-28 (citations omitted).

Plaintiffs respond that they "repeatedly complained about the lack of safety at the workplace, . . . the hostile work environment, and the almost daily sexualized menace they endured," where they "were not working in a prison or a locked psychiatric facility" such that "near daily serious threats of sexualized violence were not inherent in their job description," and that "[t]heir complaints about the failure to provide a safe workplace, and [D]efendants' explicit retaliatory terminations, are readily cognizable under the New York Labor Law." ECF No. 20 at 23.

In reply, Defendants contend that Plaintiffs fail to "identify the specific activities, policies or practices of the employer that they contend broke the law," as their "vague allegations that Defendants failed to provide a safe workplace" are insufficient; that Plaintiffs do not "allege that they disclose[d] or threaten[ed] to disclose the employer's activity, policy or practice"; and that "reporting patient behavior to their employer (or calling the police when necessary) is not whistleblowing," particularly where the behavior is not attributable to Defendants. ECF No. 21 at 13-14 (citations & quotations omitted).

Plaintiffs sufficiently pleaded their claim for violation of NYLL § 740.

14

### 1.    Retaliatory Action

Plaintiffs pleaded the requisite retaliatory action, in that Ms. Dagrosa, Ms. Johnson and Ms. Knight were suspended and ultimately terminated and in that Ms. Hayes was terminated as well.  See ECF No. 29 ¶¶ 50-51, 56.

### 2.    Protected Activity

At the outset, the Court notes that the scope of protected activity under NYLL § 740 was significantly expanded by the 2022 statutory amendments.  Whereas the former version of the statute prohibited retaliatory employment action if an employee, inter alia,

> disclose[d], or threaten[ed] to disclose to a supervisor or to a public body an activity, policy or practice of the employer that [wa]s in violation of law, rule or regulation which violation create[d] and present[ed] a substantial and specific danger to the public health or safety, or which constitute[d] health care fraud,

NYLL § 740(2) (2019), amended by NYLL § 740(2) (2022), the current version of the statute prohibits retaliatory employment action if an employee, inter alia,

> discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation[7] or that the employee reasonably believes poses a substantial and specific danger to public health or safety,

NYLL § 740(2); see Klein v. Brookhaven Health Care Facility, No. 23 Civ. 7771, 2024 WL 5074485, at *2 (2d Cir. Dec. 11, 2024) (noting that "NYLL § 740(2)(a) was amended to reach not only retaliatory action against employees who report an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, but also an activity, policy or

---

[7] The NYLL defines a "[l]aw, rule or regulation" as "(i) any duly enacted federal, state or local statute or ordinance or executive order; (ii) any rule or regulation promulgated pursuant to such statute or ordinance or executive order; or (iii) any judicial or administrative decision, ruling or order."  NYLL § 740(1)(c).

15

practice of the employer that the employee <u>reasonably believes</u> is in violation of law, rule or regulation <u>or</u> that the employee <u>reasonably believes</u> poses a substantial and specific danger to the public health or safety" (emphasis in original) (citations & quotations omitted)); <u>McSweeney v. Cohen</u>, 776 F. Supp. 3d 200, 276 (S.D.N.Y. 2025) (reasoning that, "[u]nder the new iteration of the whistleblower law, the provisions of Section 740 are disjunctive: a plaintiff need only prove either (1) that they reasonably believed the defendant's conduct to violate a law, rule or regulation <u>or</u> (2) that they reasonably believed the defendant's conduct posed a substantial and specific danger to the public health or safety" and holding that complaints about "purported violations of the ADA, Title VII, NYSHRL, and NYCHRL, among others," were protected activities within NYLL § 740 (emphasis in original) (citations & quotations omitted)); <u>Spiegel v. 226 Realty LLC</u>, 220 N.Y.S.3d 271, 272 (1st Dep't 2024) (noting that NYLL § 740 "now covers activity that the employee reasonably believes violates law or poses a danger to the public" (citation & quotations omitted)).[8]

Plaintiffs pleaded the requisite protected activity, namely that they complained to supervisors and governing bodies about Defendants' practices in creating a gender-related hostile work environment, as is required by Title VII. <u>See, e.g.</u>, <u>id.</u> ¶ 47 (alleging that "Plaintiffs pleaded with Division Director of Health, Housing and Homelessness Solutions Marlies Paul; Dept. of Health and Chief Operating Officer Jodi Querbach; Executive Director of MHANY Ismene Speliotis[]; and NYC Department of Health and Mental Hygiene ('DOHMH') representative Debbie Modeste to create and implement safety measures, including an alarm button; provide de-escalation training; and offer counseling so that they or any other member of

---

[8] The Court need not decide the retroactivity of the 2022 amendments, given that the events at issue proceeded through mid- to late-2023, <u>see</u> ECF No. 29 ¶¶ 51, 56, and that this action was filed in mid-2025, <u>see generally</u> ECF No. 1.

the community would not be 'murdered'"); id. ¶ 49 (alleging that Plaintiffs complained to Defendants "again, describing the abusive and destructive behavior including that the staff was being used as human shields"); id. ¶ 54 (alleging that "Hayes reported the continuing harassment and workplace violence," emphasizing "that clients were brandishing objects capable of harm including a hammer, knife, fire extinguisher, and suspicious liquids").

### 3.     Causal Link

Plaintiffs pleaded the necessary causal link between their reporting of concerns regarding the alleged hostile work environment and their suspensions and terminations, pointing to Defendants' discontent as to their expression of their concerns, especially the division director's statement insinuating that the reporting of such concerns by Ms. Knight, Ms. Johnson and Ms. Dagrosa led to their terminations.  See id. ¶ 48 (alleging that "DOHMH and BCS made it clear that they were alarmed and angered by [P]laintiffs' refusal to work in the unsafe environment"); id. ¶¶ 50-51 (alleging that, "[a] day after they reemphasized the dangerous harassment and hostile work environment, Dagrosa, Johnson and Knight were suspended without pay," after which they were terminated); id. ¶ 57 (alleging that, "[p]rior to terminating Hayes, Coit ordered Hayes not to share her concerns with her colleagues, and told her that [Knight, Johnson and Dagrosa] didn't like how things were run and they are no longer here" (quotations omitted)).

Defendants' arguments relate to a defense similar to that raised as to the discrimination and retaliation claims – that patient conduct itself cannot be the basis for claims against Defendants.  Defendants may be partially or wholly correct if the record develops as they suggest, but it is far too premature to determine on the pleadings what Plaintiffs' working conditions were, whether Defendants failed to respond properly to Plaintiffs' complaints and whether Plaintiffs' complaints about the workplace met the § 740 standard.

Accordingly, the Court denies the motion as to Plaintiffs' claim for violation of NYLL § 740.

## III.    CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss.  Per the Court's September 8, 2025, Order granting the motion to stay discovery, by April 13, 2026, the parties must file a proposed discovery schedule.  The parties are encouraged to consider participating in Court-annexed mediation; if the parties wish to receive a referral thereto, they may file a joint letter requesting such referral at any time.

Dated: Brooklyn, New York
        March 30, 2026

*Vera M. Scanlon*
        VERA M. SCANLON
        United States Magistrate Judge